**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HARDIK HASMUKHBHAI PATEL, *et. al.,* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-11019 |
| | ) |
| MARKWAYNE MULLIN,[1] in his official | ) Judge Sharon Johnson Coleman |
| capacity as Secretary of Homeland Security, *et* | ) |
| *al.,* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Hardik Hasmukhbhai Patel, Rekhaben Hardikkumar Patel, and Khushi Hardikbhai Patel (collectively, "Plaintiffs"), brought this action against Defendants Markwayne Mullin, the Secretary of the U.S. Department of Homeland Security ("DHS"), Todd Blanche, the acting Attorney General of the United States and the acting head of the U.S. Department of Justice ("DOJ"), Kika Scott, the Director of U.S. Citizenship and Immigration Services ("USCIS"), Laura Zuchowski, the Director of the USCIS Vermont Service Center, and Loren K. Miller, the Field Office Director of the USCIS Nebraska Service (collectively, "Defendants"), all in their official capacities. Plaintiffs seek relief on three theories. First, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b) and 706(1), Plaintiffs allege that Defendants have unreasonably delayed adjudicating their Form I-918 Petitions for U-Nonimmigrant Status, including unreasonable delay in placing Plaintiffs on the statutory waiting list established by 8 C.F.R. § 214.14(d)(2). Second, under the Mandamus Act, 28

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Mullen is automatically substituted for former Secretary Noem as a defendant. The same is true of acting Attorney General Todd Blanche for former Attorney General Pamela Bondi.

U.S.C. § 1361, Plaintiffs seek an order compelling USCIS to place them on the waiting list and to grant parole to the minor derivative beneficiary, Plaintiff Khushi Hardikbhai Patel, to enter the United States pursuant to 8 U.S.C. § 1182(d)(5). Third, under the APA, Plaintiffs allege that Defendants have unreasonably delayed issuing employment authorization documents and making a bona fide determination pursuant to section 214(p)(6) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1184(p)(6). Before the Court is Defendants' Motion to Dismiss [10], pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the Court grants Defendants' Motion to Dismiss in its entirety.

**BACKGROUND**

Unless otherwise noted, the following factual allegations are taken from Plaintiff's Complaint, Dkt. 1, and are assumed true for purposes of resolving this Motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

### A. The U Visa Program

On October 28, 2000, Congress created the U-visa through the passage of the Victims of Trafficking and Violence Protection Act of 2000 for noncitizen victims of qualifying crimes who assist law enforcement in the investigation or prosecution of those crimes. Dkt. 1 at *4-5; *see* 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV). Congress capped the annual grant of principal U visas at 10,000 per fiscal year. *Id.* § 1184(p)(2)(A). Because the annual cap is routinely exceeded, the path from petition to U-visa status involves three sequential stages, each governed by a different legal standard and carrying different interim benefits. *See* USCIS, *U Visa and Bona Fide Determination Process- Frequently Asked Questions*, USCIS.GOV, (Oct. 29, 2022), https://www.uscis.gov/records/electronic-reading-room/national-engagement-u-visa-and-bona-fide-determination-process-frequently-asked-questions [hereinafter *U Visa FAQ*].

The first stage to pursuing a U-visa is the bona fide determination ("BFD"). Pursuant to INA § 214(p)(6), 8 U.S.C. § 1184(p)(6), as of June 14, 2021, USCIS adjudicates pending, non-waitlisted petitions in receipt date order to determine whether they are "bona fide." If USCIS finds a petition to be "bona fide" and determines in its discretion that the petitioner does not pose a national security or public safety risk, the petitioner receives employment authorization documents ("EADs," sometimes referred to as "BFD EADs") and deferred action on an interim basis. *Romero v. Scott*, No. 24 CV 4372, 2025 WL 815071, at *1 (N.D. Ill. Mar. 12, 2025) (Jenkins, J.). Petitioners who receive a BFD skip the waitlist stage entirely and proceed directly to final adjudication. *See U Visa FAQ*.

If the petitioner is not issued a BFD, the next stage is waiting list placement. *Id.* USCIS must place "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status [...] on a waiting list." 8 C.F.R. § 214.14(d)(2). "Priority on the waitlist is determined by the date the petition was filed with the oldest petitions receiving the highest priority." *Id.*; *Calderon-Ramirez v. McCament,* 877 F.3d 272, 274–75 (7th Cir. 2017). Once on the waitlist, petitioners and qualifying family members receive deferred action and potential work authorization while they await final adjudication. 8 C.F.R. § 214.14(d)(2). Placement on the waitlist is mandatory for anyone who does not receive a BFD; however, placement can take many months, and petitioners still waiting to be placed on the waitlist do not yet receive the associated benefits. *Calderon-Ramirez*, 877 F.3d at 274. Petitioners outside the U.S. also do not receive deferred action, as those outside the U.S. have no potential removal to be deferred. *Chaudhari v. Noem*, 25 C 1908, 2026 WL 381617, at *1 (N.D. Ill. Feb. 5, 2026) (Lefkow, J.).

The third stage is final adjudication of the U-visa petition itself, which occurs in receipt date order for all petitioners. 8 C.F.R. § 214.14(d)(2).

### B.  Factual and Procedural Background

Plaintiff Hardik Hasmukhbhai Patel is an Indian citizen who has resided in the United States for approximately seven years.  (Dkt. 1 at *8.)  On November 11, 2023, Mr. Patel entered a gas station and suddenly, an unknown assailant approached Mr. Patel at gunpoint and demanded money.  (Dkt. 1 at *8.)  The assailant fled and Mr. Patel reported the crime to Chicago Police Department officers. Mr. Patel fully cooperated with the investigation and answered all questions posed by responding officers.  (Dkt. 1 at *8.)  The Chicago Police Department Chief of Police certified on Form I-918 that Mr. Patel had been helpful in the investigation.  (Dkt. 1 at *9). The episode made Mr. Patel eligible for U nonimmigrant status because he was a victim of a qualifying crime who assisted with the investigation.

Plaintiff Rekhaben Hardikkumar Patel is also a citizen of India.  She is Mr. Patel's wife and, through him, is derivatively eligible for U nonimmigrant status.  (Dkt. 1 at *3.)  Plaintiff Khushi Hardikbhai Patel is Mr. Patel's minor daughter, born October 23, 2012, who currently resides in India and, through him, is derivatively eligible for U nonimmigrant status.  (Dkt. 1 at *3.)

On January 13, 2025, Mr. and Mrs. Patel submitted complete Form I-918 U visa petitions and accompanying Form I-765 employment authorization applications to the USCIS Nebraska Service Center.  (Dkt. 1 at *9.)  USCIS issued receipt notices on January 31, 2025.  (Dkt. 1 at *9.)  Biometrics notices were issued on April 4, 2025 and April 11, 2025, and biometrics were completed on April 25, 2025 and April 30, 2025, respectively.  (Dkt. 1 at *9.)  As of the date of filing, USCIS had not issued notices placing Plaintiffs on the waitlist, conducted a BFD, or granted parole to Mr. Patel's daughter. (Dkt. 1 at *10.)

Plaintiffs filed this Complaint on October 1, 2025, approximately nine months after the submission of their petitions and roughly five months after completing biometrics.  (Dkt. 1 at *10.) Plaintiffs allege harm including the inability to maintain a livelihood, work lawfully, inability to obtain

a driver's license, and the prolonged separation of the minor daughter from her parents in the United States. (Dkt. 1 at *10.) By the time Defendants filed their reply brief on March 11, 2026, approximately eleven months had elapsed since the completion of biometrics. (Dkt. 15 at *1.)

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction. *Choice v. Kohn Law Firms, S.C.*, 77 F.4th 636, 638–39 (7th Cir. 2023). The party asserting jurisdiction bears the burden of establishing it. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For both Rules, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (12(b)(1)); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (12(b)(6)); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019) (12(b)(6)).

**DISCUSSION**

Plaintiffs bring three claims. Count I asserts APA unreasonable delay under 5 U.S.C. § 555(b) in processing their U-visa petitions generally. Count II asserts mandamus under 28 U.S.C. § 1361 on two distinct grounds: the regulatory obligation to place eligible petitioners on the waiting list under 8 C.F.R. § 214.14(d)(2), and the duty to make a BFD under 8 U.S.C. § 1184(p)(6). Count III asserts APA unreasonable delay under § 1184(p)(6) in issuing EADs and BFD relief, and in granting parole to the

5

minor daughter. Before reaching the merits of any claim, the Court must address whether 8 U.S.C. § 1252(a)(2)(B)(ii) strips this Court's jurisdiction over any of these claims.

## I. Subject Matter Jurisdiction

Defendants assert this Court lacks subject matter jurisdiction over Plaintiffs' BFD claims in Counts II and III because 8 U.S.C. § 1184(p)(6) expressly commits these decisions to agency discretion, which they argue triggers § 1252(a)(2)(B)(ii)'s jurisdictional bar. (Dkt. 11 at *6–8.) Plaintiffs respond that the Court retains jurisdiction to compel agency action even where it cannot review the outcome of a discretionary decision, relying on 5 U.S.C. § 706(1). (Dkt. 14 at *2–3.) Plaintiffs further contend that they are not asking the Court to direct a discretionary outcome, but only to compel USCIS to act at all. This section addresses only the BFD/EAD claims subject to 8 U.S.C. § 1252(a)(2)(B)(ii)'s jurisdictional bar. Plaintiffs' alternative mandamus and unreasonable delay claims are addressed in Sections II and III below.

### A. Plaintiffs' BFD/EAD Claims

Section 1252(a)(2)(B) is "a jurisdiction-stripping provision" which provides that "[n]otwithstanding any other provision of law" no court shall have jurisdiction over any "decision or action" the authority for which is specified to be in agency discretion. 8 U.S.C. § 1252(a)(2)(B). Section 1252(a)(2)(B)(ii) specifically applies to "any… decision or action of the Attorney General or the Secretary of Homeland Security" where that authority is specified by statute to be discretionary. *Bouarfa v. Mayorkas*, 604 U.S. 6, 11 (2024). In *Kucana v. Holder,* the Supreme Court held that the dispositive inquiry is whether Congress specified the relevant discretion in the statutory text. 558 U.S. 233 (2010); *see Calma v. Holder*, 663 F.3d 868, 872 (7th Cir. 2011).

Here, the relevant U-visa statute, 8 U.S.C. § 1184(p)(6), provides that "[t]he Secretary may grant work authorization" to applicants with "pending, bona fide" U-visa petitions. The Supreme

6

Court has made clear that the word *may* "clearly connotes discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14 (2024) (quoting *Biden v. Texas*, 597 U.S. 785, 802 (2022)). Courts in this district have uniformly applied this jurisdictional bar to discretionary immigration decisions. *See Patel v. Noem*, 788 F. Supp. 3d 950, 954–56 (N.D. Ill. 2025) (Bucklo, J.); *Lobatos v. Noem*, No. 25 C 1223, 2025 WL 1651220, at *5 (N.D. Ill. June 11, 2025) (Kendall, J.); *Vasant Patel v. Noem*, No. 24 C 12143, 2025 WL 1489204, at *2 (N.D. Ill. May 23, 2025) (Alonso, J.).

The scope of that bar extends beyond the ultimate discretionary decision. In *Soni v. Jaddou,* the Seventh Circuit held that "Setting priorities—for example, how many employees to assign to processing applications—is an 'action regarding'" the discretionary decision, and is equally unreviewable. 103 F.4th 1271, 1272–73 (7th Cir. 2024). Courts in this district have interpreted this language to mean that this jurisdictional bar extends not only to ultimate decisions, but also to "'any… action' leading to [that] decision[ ] as well," including timing. *See Garcia v. U.S. Citizenship & Immigr. Servs.*, 760 F. Supp. 3d 671, 673 (N.D. Ill. 2024) (Alexakis, J.) ("§ 1252(a)(2)(B)(ii) strips the Court of the ability to review not just those ultimate decisions but any action leading to such decisions" and thus "insulates from judicial review the timeline under which that process unfolds." (cleaned up)); *Vasant Patel*, No. 24 C 12143, 2025 WL 1489204, at *2 (similar)

Defendants argue that § 1252(a)(2)(B)(ii)'s "notwithstanding any other provision of law" command forecloses jurisdiction over Plaintiffs' claims. (Dkt. 11 at *6–8); (Dkt. 15 at *3–4.) They emphasize that because § 1184(p)(6) is explicitly discretionary and both BFD and work-authorization decision-making are discretionary, the court is stripped of jurisdiction. (Dkt. 15 at *4.). Defendants further contend that the jurisdictional bar encompasses the pace of adjudication and is unreviewable. (Dkt. 11 at *7–8.) To hold otherwise, they argue, would allow any petitioner to reframe a challenge to a discretionary decision as one of "inaction," thereby circumventing the jurisdictional bar entirely, rendering it illusory. (Dkt. 15 at *3–4.). Finally, Defendants assert that because the BFD process is a

predicate step to the EAD decision, the jurisdictional bar applies equally to both stages of that process. (Dkt. 11 at *8.)

Plaintiffs respond by asserting that the Court retains jurisdiction to compel agency action even where it cannot review a discretionary outcome. Relying on 5 U.S.C. § 706(1), Plaintiffs contend the courts may "compel agency action unlawfully withheld or unreasonably delayed." (Dkt. 14 at *2–3.) In Plaintiffs' view, the relevant question is not *how* USCIS exercises its discretion, but whether it has exercised any discretion at all. Plaintiffs further argue that § 1252(a)(2)(B)(ii) should be read narrowly to reach only final substantive decisions, such as the grant or denial of a BFD, and not the timing or pace of the agency's processing. (Dkt. 14 at *2–3.) They assert that accepting Defendants' reading would permit USCIS to delay indefinitely and thereby evade judicial scrutiny simply by declining to act. They add that this would be contrary to the APA's requirement that agencies act within a reasonable time under 5 U.S.C. § 555(b). (Dkt. 14 at *2–3.)

The dispositive question under *Kucana* is whether Congress specified the relevant discretion in the statutory text. It did. Section 1184(p)(6)'s "may grant" language is a congressional specification of discretion, and the bar therefore applies. Because the BFD is a predicate step to the EAD decision and both are discretionary under § 1184(p)(6), the jurisdictional bar extends to both the ultimate determinations and the pace of adjudication leading to them. *Garcia*, 760 F. Supp. 3d at 673; *Lobatos*, 2025 WL 1651220, at *5.

Plaintiffs' reliance on § 706(1) does not alter this conclusion. Once § 1252(a)(2)(B)(ii) is triggered by a statutory grant of discretion, its "notwithstanding any other provision of law" command overrides § 706(1). *Soni*, 103 F.4th at 1272–73. Accepting Plaintiffs' contrary reading would allow any petitioner to reframe a challenge to a discretionary outcome as a challenge to agency inaction and sidestep the bar entirely, rendering it illusory. *Beshir v. Holder*, 10 F. Supp. 3d 165, 174 (D.D.C. 2014).

8

Defendants' motion to dismiss for lack of subject matter jurisdiction is granted as to stage one of the U-visa process—the BFD/EAD components of Plaintiffs' claims. This encompasses Count I to the extent it seeks to compel a BFD under 8 U.S.C. § 1184(p)(6) and Count III in its entirety.

The same reasoning forecloses jurisdiction over Plaintiffs' mandamus claim (Count II) to the extent it seeks BFD/EAD relief. Mandamus is not an independent source of jurisdiction that can override a statutory jurisdictional bar. Where Congress has expressly precluded judicial review of a category of claims, a plaintiff cannot obtain the same relief by repackaging the claim under 28 U.S.C. § 1361. *See Nayi v. Noem*, 799 F. Supp. 3d 739, 751 (N.D. Ill. 2025) (Hajani, J.). As discussed above, this Court lacks jurisdiction under § 1252(a)(2)(B)(ii) over Plaintiffs' claims seeking BFD/EAD relief under § 1184(p)(6). Recognizing jurisdiction over a mandamus claim seeking that same relief would circumvent Congress's clear intent to limit review. The Court therefore likewise lacks jurisdiction over the BFD component of Count II.

Accordingly, the BFD components of Counts I and II are dismissed for lack of subject matter jurisdiction. Count III is dismissed in its entirety. Defendants do not explicitly argue that § 1252(a)(2)(B)(ii) bars adjudication through the second stage, the waitlist claim, and the Court agrees it does not. (Dkt. 11 at *6–8.) Accordingly, this Court has jurisdiction over the waitlist unreasonable delay component of Counts I and II.[2]

---

[2] Courts have split on whether the mandatory placement obligation under 8 C.F.R. § 214.14(d)(2) is sufficient to support jurisdiction over waitlist delay claims. *Compare Patel v. Noem,* 788 F. Supp. 3d 950, 956 (N.D. Ill. 2025) (Bucklo, J.); *Ahir v. Noem,* 25-CV-00470, 2025 WL 2522642 (N.D. Ill. Sept. 2, 2025) (Rowland, J.); *Gonzalez v. Cuccinelli,* 985 F.3d 357, 374 n.10 (4th Cir. 2021); *Moreno v. Wolf,* 558 F. Supp. 3d 1357, 1364 (N.D. Ga. 2021); *Uranga v. USCIS,* 490 F. Supp. 3d 86, 101–02 (D.D.C. 2020); *Esparza v. Mullin,* 1:25-CV-00555-SBP, 2026 WL 872352 (D. Colo. Mar. 30, 2026) (jurisdiction exists), *with Hasan v. Wolf,* 550 F. Supp. 3d 1342, 1347–48 (N.D. Ga. 2021); *Butanda v. Wolf,* 516 F. Supp. 3d 1243, 1248–49 (D. Colo. 2021) (jurisdiction does not exist). In the absence of a statutory grant of discretion over waitlist placement, courts in this district have followed the view that the mandatory regulation is sufficient to support jurisdiction. *See Patel,* 788 F. Supp. 3d at 956.

## II. Unreasonable Delay

Although this Court retains jurisdiction over Plaintiffs' waitlist claim under Count I, it fails to state a plausible unreasonable delay claim under the APA. 5 U.S.C. § 555(b). Defendants move to dismiss Count I on the grounds that Plaintiffs' nonspecific, conclusory allegations fail as a matter of law under the associated factors. (Dkt. 11 at *8–11.) Plaintiffs respond that the factors are not conclusively weighed at the pleading stage and that the humanitarian nature of their circumstances, including family separation involving a minor abroad, distinguishes this case from routine agency delay. (Dkt. 14 at *4–6.)

The APA requires that agencies "within a reasonable time . . . proceed to conclude a matter presented to" them. 5 U.S.C. § 555(b). To determine whether delay is unreasonable, courts apply the six-factor *Telecommunications Research & Action Center* ("TRAC") framework:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Dyvonyak v. Mayorkas*, 23-CV-16528, 2024 WL 3520058 (N.D. Ill. July 24, 2024) (Coleman, J.) (quoting *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999)); *see Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984). There is no dispute as to whether it is appropriate to apply the TRAC factors at this motion to dismiss stage. *Dyvonyak*, 23-CV-16528, 2024 WL 3520058, at *2.

## A. TRAC Factor One

The first "and most important factor" asks whether the agency's pace is governed by a rule of reason. *Romero,* No. 24 C 4372, 2025 WL 815071, at *4; *Patel,* 788 F. Supp. 3d at 957. USCIS adjudicates U-visa petitions on a first-in, first-out basis, with priority on the waitlist determined by filing date. 8 C.F.R. § 214.14(d)(2); 72 Fed. Reg. 53,014, 53,033 (Sept. 17, 2007). Courts have consistently concluded, including at the pleading stage, this constitutes a rule of reason. *See e.g., Patel,* 788 F. Supp. 3d at 958; *Aljabari v. Mayorkas,* No. 21-cv-6645, 2022 WL 2073047, at *3 (N.D. Ill. June 9, 2022) (Seeger, J.); *Lubega v. Mayorkas,* No. 23 C 17177, 2024 WL 4206425, at *2 (N.D. Ill. Sept. 11, 2024) (Harjani, J.).

Defendants argue USCIS applies a consistent first-in, first-out framework that constitutes a rule of reason, and that courts at the pleading stage have repeatedly so held. (Dkt. 11 at *9.). Plaintiffs did not explicitly respond to this argument and thus constitutes waiver. *See, e.g., McCottrell v. White,* 933 F.3d 651, 670 n.12 (7th Cir. 2019) (noting how underdeveloped arguments are waived); *Elizarri v. Sheriff of Cook Cnty.,* No. 7 C 2427, 2017 WL 5900277, at *3 (N.D. Ill. Feb. 15, 2017) (refusing to consider inadequately briefed issues). Accordingly, TRAC factor one favors Defendants.

## B. TRAC Factor Two

The second TRAC factor asks whether Congress has provided a timetable. *Patel,* 788 F. Supp. 3d at 958. The INA and its corresponding regulations "fail to enumerate a timeframe that USCIS is required to process U-visa petitions for the waiting list." *Calderon-Ramirez,* 877 F.3d at 275; *see also Romero,* 2025 WL 815071, at *4 ("Congress has not prescribed specific deadlines by which USCIS should adjudicate U visas.") In the absence of a statutory yardstick, courts look to case law for guidance. *Dyvonyak,* 2024 WL 3520058, at *2; *Patel,* 788 F. Supp. 3d at 958. Courts have generally found that immigration delays in excess of five years are unreasonable, and those between three to five years are not." *Dyvonyak,* 2024 WL 3520058, at *2.

Defendants argue that Plaintiffs' nine-month wait falls well within USCIS's 18.5-month processing time for 80% of petitions and far below the durational thresholds courts have found unreasonable. (Dkt. 11 at *9–10; Dkt. 15 at *5–6.) Plaintiffs argue their nine-month delay is unreasonable given the humanitarian nature of their circumstances and that processing-time averages do not account for individualized prejudice. (Dkt. 14 at *4–5.)

Plaintiff fails to establish the Second TRAC factor. The Seventh Circuit affirmed dismissal of an unreasonable-delay claim where the petitioner had waited approximately eighteen months—longer than Plaintiffs have waited here. *Calderon-Ramirez*, 877 F.3d at 275–76. Additionally, Courts in this district have dismissed cases involving twenty-five- and twenty-nine-month waits. *See Patel*, 788 F. Supp. 3d at 958; *Romero*, 2025 WL 815071, at *3–4. Here, Plaintiffs filed U-visa petitions on January 13, 2025 and approximately fourteen months (slightly over one year) has passed without a final decision. As courts have established, a delay of two years or less is not unreasonable. Accordingly, TRAC factor two favors Defendants.

### C. TRAC Factors Three and Five

These factors ask whether the delay touches on human health and welfare and the nature of interests prejudiced. *Patel*, 788 F. Supp. 3d at 958. Waitlist placement carries deferred action and potential work authorization—interests that extend beyond the merely economic—to Plaintiffs' security from removal. *Id.* However, courts evaluate a Plaintiff's interests "alongside the interests of those who are similarly situated." *Dyvonyak*, 2024 WL 3520058, at *3.

Defendants argue these harms are inherent to the application process and shared by the many thousands of similarly situated petitioners, and do not differentiate Plaintiffs from the general pool. (Dkt. 11 at *9); (Dkt. 15 at *5.). Plaintiffs argue their circumstances—crime victimization, inability to work or drive, and the minor daughter's separation from her parents in India—distinguish this case from routine agency delay and satisfy factors three and five. (Dkt. 14 at *5–6.) They assert that the

prolonged separation of the minor daughter Khushi, who remains in India, compounds the human stakes of the delay. (Dkt. 14 at *5.)

Plaintiff also fails to establish the third and fifth TRAC factors. The Court understands and is deeply sympathetic to the emotional and psychological pain suffered by the Patels due to their prolonged family separation. However, this is a harm that is also shared by many other U Visa applicants awaiting placement on the waitlist. The Seventh Circuit in *Calderon-Ramirez* found identical harms insufficient to distinguish a petitioner from others in line and affirmed dismissal. *Calderon-Ramirez*, 877 F.3d at 275–76. Plaintiffs point to no facts establishing that their circumstances are so distinct as to warrant jumping ahead of others in line, many of whom are also hoping for an end to their own family separation. Accordingly, these factors favor Defendants.

### D. TRAC Factor Four

This factor asks whether expediting the delayed action would "impact other, higher-priority agency activities." *Patel*, 788 F. Supp. 3d at 958; *TRAC*, 750 F.2d at 80. Here, applications filed prior to Plaintiffs' are "argua[bly] higher priority by virtue of the longer time they have been pending." *Patel*, 788 F. Supp. 3d at 958–59. Granting Plaintiffs' request would delay their resolution as "[Plaintiffs'] application would presumably divert resources away from other competing priorities." *Id.*; *Dyvonyak*, 2024 WL 3520058, at *3 (citing *Ebrahimi*, 732 F. Supp. 3d at 913).

Defendants argue that compelling adjudication at nine months redistributes agency resources and allows Plaintiffs to jump the line ahead of equally deserving petitioners who have waited longer. (Dkt. 11 at *10); (Dkt. 15 at *6.) Plaintiffs argue they do not seek to jump the queue but only to compel a threshold BFD, which does not reorder final adjudications. (Dkt. 14 at *5.)

Plaintiff fails to state a claim that satisfies the fourth factor. The Seventh Circuit in *Calderon-Ramirez* was direct: a petitioner cannot establish a right to "skip ahead of other petitioners who filed

an application before" them while those petitions remain unresolved. 877 F.3d at 275. Accordingly, factor four favors Defendants.

### E. TRAC Factor Six

The sixth TRAC factor clarifies that courts need not find impropriety to grant relief. *Patel*, 788 F. Supp. 3d at 958; *TRAC*, 750 F.2d at 80. This factor has "no bearing" on the analysis where no bad faith is alleged. *Dyvonyak*, 2024 WL 3520058, at *4. Plaintiffs allege no bad faith or impropriety in their complaint and no allegation of bad faith is required to find unreasonableness on USCIS's part. Accordingly, the sixth factor has no bearing on the Court's analysis.

### F. Summary

Taken together, the TRAC factors demonstrate that Plaintiff has not plausibly alleged that the now fourteen-month delay in adjudication is unreasonable. The Seventh Circuit's decision in *Calderon-Ramirez* is directly on point. The court affirmed dismissal of an APA unreasonable delay claim by a U-visa petitioner who had waited eighteen months and "fail[ed] to set forth any facts that differentiate himself from other petitioners waiting ahead of him." 877 F.3d at 275. The same is true here. The passage of time alone "is insufficient to support a claim for unreasonable delay." *Lubega*, 2024 WL 4206425, at *2 (citing *INS v. Miranda*, 459 U.S. 14, 18 (1982)). Accordingly, the waitlist component of Count I is dismissed for failure to state a claim.

## III. Mandamus

Defendants move to dismiss Plaintiffs' mandamus claim on two grounds: (1) it is redundant of the APA claim and therefore fails the "no adequate remedy" element of mandamus; and (2) Plaintiffs have waived the claim by failing to adequately brief it in opposition. (Dkt. 11 at *11–12); (Dkt. 15 at *2–3.) Plaintiffs respond that alternative pleading is expressly permitted by the Federal Rules and that USCIS has a clear duty to process U-visa petitions within a reasonable time. (Dkt. 14 at *6.)

14

In a mandamus action, 28 U.S.C. § 1361 grants district courts the power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Dyvonyak*, 2024 WL 3520058, at *4. A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *United States v. Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). For the court to grant the writ, Plaintiff must demonstrate: "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) [that] no other adequate remedy is available." *Dyvonyak*, 2024 WL 3520058, at *4; Calderon-*Ramirez*, 877 F.3d at 275 (quoting *Iddir,* 301 F.3d at 499).

Even under the waitlist component of Count II, Plaintiffs cannot satisfy the third element for mandamus, as the Court may grant their requested remedy under the APA. *Dyvonyak*, 2024 WL 3520058, at *4. As other courts have recognized, where relief sought via mandamus is duplicative of that sought under the APA, the court must dismiss the petition for writ of mandamus. *Id.*; *Ebrahimi*, 2024 WL 2020038, at *8; *see also Blaney v. United States*, 34 F.3d 509, 513 (7th Cir. 1994) ("[M]andamus jurisdiction can be invoked only when […] no other adequate remedy is available.") It is impossible for Plaintiffs to satisfy the "no adequate remedy" element while simultaneously arguing that the APA provides an adequate remedy for the same wrong. Plaintiffs' argument that alternative pleading is expressly permitted by the Federal Rules does not save the claim: the issue is not the form of pleading, but that Plaintiffs cannot logically maintain that no adequate remedy exists while simultaneously invoking one. Accordingly, Count II is dismissed for failure to state a claim.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss in its entirety [10]. The dismissal is without prejudice. Plaintiffs may file an amended complaint within twenty-one days if they can cure the legal deficiencies identified in this opinion. Additionally, if Plaintiffs have not received a BFD or waitlist placement by January 13, 2027 (two years after submission), then they may

15

file an amended complaint at such time. The Court will stay any entry of judgment until at least February 13, 2027.

**IT IS SO ORDERED.**

Date: 4/22/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge